GARY AND DONNIE MARZETTA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Marzetta v. Commissioner
Docket Nos. 25124-88, 32559-88[1]
United States Tax Court
T.C. Memo 1991-318; 1991 Tax Ct. Memo LEXIS 353; 62 T.C.M. (CCH) 112; T.C.M. (RIA) 91318; July 10, 1991, Filed *353 Decision will be entered under Rule 155 in Docket No. 25124-88. Decision will be entered for petitioners in Docket No. 32559-88. Karen Hawkins, for the petitioners. Shelleyanne Chang, for the respondent. MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined deficiencies and additions to tax in petitioners' Federal income taxes as follows: Additions
to Tax
Year
Deficiency
Sec. 6651(a)(1) [2]
Sec. 6653(a)(1)
1985
$ 28,120.00
--
$ 1,406.00
Year
Sec. 6653(a)(2)
Sec. 6661
1985
50 percent of
$ 4,703.50
the interest
due on $ 28,120.00
Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)(1)(A)
1986
$ 9,895.00
$ 1,410.00
$ 568.85
Year
Sec. 6653(a)(1)(B)
Sec. 6661
1986
50 percent of
$ 2,473.75
the interest due
on $ 9,895.00
*354 After concessions, [3] the issues for decision are: (1) Whether the noncorporate lessor requirements of section 46(e)(3) prohibit petitioners from qualifying for the investment tax credit for the taxable year 1985; (2) whether petitioners can deduct $ 5,200 in 1986 for amounts which Mr. Marzetta paid to his lessee; (3) whether petitioners are liable for additions to tax under section 6653(a) for both of the taxable years in issue; and (4) whether petitioners are liable for additions to tax under section 6661 for both of the taxable years in issue. *355 FINDINGS OF FACT Petitioners resided in Vacaville, California, at the time they filed their petitions in these cases. The deficiency determinations in issue arise out of a sale-leaseback transaction entered into between Gary Marzetta (petitioner) and Pacific Wood Preserving of Bakersfield, Inc. (Pacific Wood), a Nevada Corporation. Pacific Wood is in the wood preservation and treatment business. Pacific Wood has different clients who have differing wood treatment needs. For instance, Pacific Wood treats wood products used in the railroad, construction, and wine industries. Southern Pacific Transportation Company (Southern Pacific) was engaged primarily in the railroad business. At one time, Southern Pacific maintained a plant in Houston, Texas, for chemically treating railroad ties and other wood products. Because of the passage of environmental restrictions, Southern Pacific decided that the plant was no longer economically feasible. Southern Pacific solicited bids for the sale of the equipment located at its Houston wood processing plant, and on November 9, 1984, Pacific Wood and Southern Pacific executed an agreement under which Pacific Wood agreed to purchase the equipment. *356 As part of this agreement, Pacific Wood agreed to sell railroad ties to Southern Pacific at a discount. Appendix A is a list of the equipment that Southern Pacific sold to Pacific Wood. Pacific Wood received financing from Canadian Commercial Bank (Canadian Commercial). In early 1985, Canadian Commercial became concerned about the amount of Pacific Wood's equipment purchases. Specifically, Canadian Commercial was concerned that the equipment was too specialized in nature, that it did not have a high resale value, and that it did not adequately secure Canadian Commercial's loans to Pacific Wood. In order to ease these concerns, Pacific Wood decided to sell some of its equipment and then lease it back. On July 1, 1985, petitioner and Pacific Wood entered into an agreement under which petitioner agreed to purchase some of the equipment which Pacific Wood had previously purchased from Southern Pacific and lease this equipment back to Pacific Wood. This was one of the sale-leaseback transactions entered into by Pacific Wood to placate Canadian Commercial. Pursuant to the terms of this agreement, petitioner agreed to purchase equipment from Pacific Wood for $ 125,000. Petitioner *357 made a down payment of $ 15,000 and executed a promissory note for $ 110,000, payable in monthly installments. Pursuant to this agreement, Pacific Wood agreed to maintain the equipment in good repair, condition, and working order, to furnish all parts and servicing at its own expense, maintain casualty insurance on the equipment at its own expense, and to obtain and maintain liability insurance on the equipment. The lease term was for five years. On July 22, 1985, Pacific Wood and petitioner executed a second lease agreement. This second lease agreement was entered into for the sole purpose of accurately listing the equipment which petitioner was purchasing and leasing back to Pacific Wood. Otherwise, the terms of the second lease agreement were the same as the terms in the first lease agreement. The second lease agreement states that petitioner is purchasing and leasing back to Pacific Wood a drott hydraulic crane, a framing mill, and a tie stacker and bander. A drott hydraulic crane is used for moving equipment. A framing mill is a structure that houses equipment used in the process of "dopping," or cutting railroad ties at various angles. A tie stacker and bander is used *358 to band railroad ties together so that they can be put into treatment cylinders or loaded onto boxcars or flat cars for movement. Sometime after petitioner and Pacific Wood had entered into the sale-leaseback agreement, Pacific Wood's accountant and assistant secretary, Alex Moore, who had signed the agreement on behalf of Pacific Wood, noticed that under the terms of the lease, petitioner would fail to qualify for the investment tax credit because he did not satisfy one of the requirements that a noncorporate lessor must meet in order to qualify for the investment tax credit under section 46(e)(3). That requirement was that, for the first 12 months after the property is transferred to the lessee, the sum of the section 162 deductions allowable to the lessor with respect to the property must exceed 15 percent of the rental income. Accordingly, sometime after the execution of the first lease document, an addendum to the lease was prepared. The addendum was signed by petitioner but was not signed by anyone on behalf of Pacific Wood. Under this addendum, petitioner agreed to reimburse Pacific Wood for the maintenance and insurance costs it incurred during the first year of the lease *359 and provided that petitioner's liability for these costs would, in any event, exceed 16 percent of the gross income from the lease, but would not exceed 20 percent of the gross income from the lease during the first year of the lease. During 1986, Pacific Wood submitted a bill to petitioner in the amount of $ 5,200 for expenses it purportedly incurred in connection with the maintenance and insurance of petitioner's equipment. On December 19, 1986, petitioner paid $ 5,200 to Pacific Wood. Fifty-two hundred dollars is slightly in excess of 15 percent of the rental income produced by the property during the first year of the lease. OPINION The first issue for decision is whether petitioners have satisfied the noncorporate lessor requirements contained in section 46(e)(3) so as to be entitled to the investment tax credit for the taxable year 1985. Section 38 allows a credit against tax for investments in certain depreciable property in an amount determined under section 46. However, section 46(e)(3) limits the availability of the credit with respect to noncorporate lessors. Subsection (e)(3) of section 46 provides: (3) Noncorporate Lessors. -- A credit shall be allowed by section *360 38 to a person which is not a corporation with respect to property of which such person is the lessor only if -- (A) the property subject to the lease has been manufactured or produced by the lessor, or (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property.
As this Court explained in Ridder v. Commissioner, 76 T.C. 867, 872 (1981), "Section 46(e)(3) is a fairly technical provision which can best be understood in terms of its purpose. In general, Congress was concerned that individuals might be tempted to use investment credits to finance the acquisition and leasing of depreciable property as tax shelters." Congress intended to deny the investment credit to those purchaser-lessors who were involved merely in financing *361 arrangements without undertaking the risks and obligations of an ongoing trade or business. Ridder v. Commissioner, supra at 872. The rental property under consideration here was neither manufactured nor produced by petitioner. Thus, petitioner, as a noncorporate lessor, must satisfy the requirements of section 46(e)(3)(B) in order to qualify for the investment tax credit. These requirements are: (1) A lease term of less than 50 percent of the useful life of the property; and (2) section 162 deductions in excess of 15 percent of the rental income generated by the property during the first year of the lease. Sec. 46(e)(3)(B). 1. Requirement that Lease Term be Less Than 50 Percent of Useful Life The parties agree that the lease term is five years. The parties disagree on the useful life of the property. In order to satisfy the less than 50 percent requirement of section 46(e)(3)(B), petitioners must show that the rental equipment has a useful life in excess of ten years. Section 46(e)(3) provides that the useful life of section 168 recovery property is the present class life determined under section 168(g)(2). Recovery property is defined as tangible *362 property of a character subject to the allowance for depreciation which is used in a trade or business or held for the production of income. Sec. 168(c)(1)(A) and (B). Section 168(g)(2) defines present class life as the class life applicable under section 167(m). Section 167(m)(1) states that the class life is to be prescribed by the Secretary. Section 1.167(a)-11(b)(4)(i), Income Tax Regs., provides that the class life under section 167(m) is the asset guideline period. Pursuant to section 1.167(a)-11(b)(4)(ii), Income Tax Regs., asset guideline periods were established in Revenue Procedure 83-35, 1983-1 C.B. 745. Since the rental equipment is recovery property under section 168, it has a useful life equal to the asset guideline period in Revenue Procedure 83-35, supra. [4]
Prior to trial, petitioners took the position that the rental equipment was Railroad Machinery and Equipment. *363 During trial, petitioners introduced evidence in an effort to prove this position. Revenue Procedure 83-35, provides that the asset guideline period for Railroad and Machinery Equipment is 14 years. Railroad Machinery and Equipment is a subcategory of the asset class "Railroad Transportation." The Railroad Transportation asset class includes assets used "in the commercial and contract carrying of passengers and freight by rail." Rev. Proc. 83-35, 1983-1 C.B. at 756. The subcategory of Railroad Machinery and Equipment is compromised of a specific list of assets. The rental equipment at issue in the instant case is not among the assets listed in this subcategory. The common factor among the assets listed in Revenue Procedure 83-35 as Railroad Machinery and Equipment is that they are final products used in the transportation of passengers or freight by rail. Petitioner's rental equipment is not a final product used in the transporation of passengers or freight by rail. At best, the rental equipment may have been used indirectly in the transportation of passengers and freight in that it was used *364 in the manufacture of railroad ties. However, such an indirect connection is not sufficient. If it were, then foundries that produced locomotives, upholstery manufacturers that produced seats in passenger cars, and signal companies that produced railroad warning signals could all claim that the equipment used to manufacture these products qualified as Railroad Machinery and Equipment. Such a broad reading is unreasonable. Respondent argues that the rental equipment is properly classified in the Manufacture of Wood Products and Furniture asset class. This asset class "Includes assets used in the production of plywood, hardboard, flooring, * * * and other wood products, including the treatment of poles and timber." Rev. Proc. 83-35, 1983-1 C.B. at 750, provides that the asset guideline period for assets classified as Manufacture of Wood Products and Furniture is ten years. The evidence indicates that the rental equipment was used as an integral part of Pacific Wood's treatment of wood products. Thus, we find that the rental equipment is properly classified in the Manufacture of Wood Products and Furniture asset class and that its useful life is ten *365 years. It follows that the term of the lease is not less than 50 percent of the useful life of the asset, and petitioners fail the first requirement of section 46(e)(3)(B). On brief, petitioners argue that the rental property does not fall within any of the asset classes listed in Revenue Procedure 83-35. Petitioners further argue that under Revenue Procedure 86-36, 1986-2 C.B. 596, the useful life is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business. Petitioners' argument is misplaced. Revenue Procedure 86-36, supra, only applies to assets to which the Secretary has not prescribed a present class life. We find that the Secretary has already prescribed a present class life to the rental property, i.e., ten years. Even if Revenue Procedure 86-36 did apply, petitioners have still failed to present evidence that the period over which they reasonably expected the asset to be useful exceeded ten years. Petitioners argue on brief that because the parties to the lease were attempting to comply with the requirements *366 of section 46(e)(3) when petitioner executed the lease and the addendum to the lease, and nevertheless decided not to decrease the term of the lease, it therefore follows that petitioner reasonably expected the asset to be useful for more than ten years. This is an inference which we are unwilling to make. We do not know all of the considerations which determined the term of the lease. The witnesses at trial did not address this. Petitioner did not testify. Contrary to the inference which petitioners would have us draw, the evidence, as discussed infra, indicates that petitioner and representatives of Pacific Wood considered the equipment to be properly classified as property used in the manufacturing of wood products until just before the trial. 2. Requirement that Section 162 Expenses must be in Excess of 15 Percent of Gross Rent Section 46(e)(3)(B) requires that during the first 12 months of the lease, the sum of deductions allowable to the lessor under section 162 exceeds 15 percent of the rental income produced by the property. In order for expenses to be deductible under section 162, petitioners must prove that they incurred ordinary and necessary expenses. Sec. *367 162; Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933). The reference to section 162 in section 46(e)(3)(B) does not require that the lessor be in a trade or business. The reference simply describes the type of ordinary and necessary expenses which are included when applying the 15-percent test. Miller v. Commissioner, 85 T.C. 1064, 1072-1073 (1985). Respondent argues that petitioners failed to prove that the expenses which they claim are the type of ordinary and necessary expenses deductible under section 162. At trial, petitioners introduced into evidence a copy of the bill submitted by Pacific Wood and the cancelled check which constituted payment of the bill. Under certain circumstances, this evidence would be sufficient to satisfy petitioners' burden of proof. However, the facts and circumstances in this case dictate a different result. Under the terms of the lease and the addendum, petitioner was required to reimburse Pacific Wood for expenses incurred, but, in any event, in an amount not less than 16 percent of the gross rentals generated by the lease during the first year. Thus, even if no expenses were incurred, petitioner promised to *368 pay back at least 16 percent of the gross rentals. Petitioners could not have deducted the reimbursement amount if Pacific Wood had not paid or incurred such expenses, and petitioners make no argument to the contrary. Rather, they contend that Pacific Wood did incur expenses with regard to the rental equipment, and that petitioner's $ 5,200 payment was to satisfy his obligation to reimburse the lessee for these expenses. At trial, petitioners presented the testimony of Alex Moore, Pacific Wood's accountant. Although Mr. Moore did not prepare the actual bill that was submitted to petitioner, he provided the information upon which the bill was based. Mr. Moore testified that the amount shown on the bill represented two expenses: the cost of insurance and the estimated cost of repairing petitioner's equipment. Mr. Moore testified that the portion of the bill which represented the estimated cost of insurance was based on Pacific Wood's insurance broker's determination of Pacific Wood's insurance cost which was attributable to petitioner's equipment. Neither the testimony of the insurance broker nor any documentation was presented to corroborate this testimony, and there was no *369 evidence presented regarding the amount of insurance premiums. Mr. Moore testified that the portion of the bill which represented the estimated cost of repairs to petitioner's equipment was initially based upon the repair allowance for wood treating equipment provided for under the Treasury Regulations. [5] Mr. Moore testified that this figure was reduced because he believed that Pacific Wood could probably repair the equipment at a cost which was less than that provided for under the regulations. However, Mr. Moore testified that Pacific Wood's accounting system did not separately account for repair expenses incurred in connection with petitioner's equipment despite the fact that Pacific Wood was supposed to submit a bill to petitioner for the actual expenses incurred in connection with the repair of this equipment. Mr. Moore testified that he did not know whether any actual repair expenses were incurred with respect to petitioner's equipment. Finally, there is no other evidence in the record which indicates that the repair expenses were actually incurred in connection with petitioner's equipment. Petitioners have failed to satisfy their burden of proving that they incurred expenses *370 which were allowable as deductions under section 162 and which exceeded 15 percent of the income produced by the rental property. [6]
The second issue for decision is whether respondent properly disallowed petitioners' deduction of $ 5,200 in "billed expenses" on Schedule E of their 1986 Federal income tax return. The parties agree that petitioner paid $ 5,200 to Pacific Wood. Petitioners' only argument is that this payment is a reimbursement of expenses incurred with respect to the equipment, *371 and thus deductible under section 162. We have already addressed this issue and found that petitioners have failed to meet their burden of proving that the $ 5,200 was a reimbursement of expenses which were incurred by Pacific Wood. Nevertheless, the $ 5,200 was paid in 1986 pursuant to the terms of the addendum, and respondent does not contend that the payment was a sham transaction. We do not think that petitioner made a gift to Pacific Wood. We, therefore, conclude that the $ 5,200 should be considered as a reduction in the amount of rents received in 1986. See Haas Bros., Inc. v. Commissioner, 73 T.C. 1217, 1221 n.3 (1980). The result is that petitioners' reported 1986 Schedule E loss from rental property remains unchanged. The third issue for decision is whether petitioners are liable for additions to tax for negligence or intentional disregard of the rules and regulations. For the taxable year 1985, section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment of tax is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for a separate addition to tax *372 equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or intentional disregard of the rules or regulations. For the taxable year 1986, section 6653(a)(1)(A) and (B) provides for additions to tax which are similar to those provided for in section 6653(a)(1) and (2). Respondent's determination is presumed correct. Bixby v. Commissioner, 58 T.C. 757 (1972); Rule 142(a). Negligence within the meaning of section 6653(a) has been defined as the "failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985). With respect to the taxable year 1985, after concessions, the remaining deficiency results from respondent's disallowance of petitioners' claimed investment tax credit. Petitioners claim that they attempted to comply with the admittedly complex requirements of section 46(e)(3). One of the reasons why respondent's disallowance was proper was because the lease term was not less than 50 percent of the useful life of the property. The evidence indicates that petitioner and the other individuals who were involved *373 with the sale-leaseback agreement believed, until shortly before the trial, that the equipment was wood preserving equipment. That being the case, it should have been clear at the time the 1985 return was prepared that the lease term of 5 years was not less than 50 percent of the 10-year useful life prescribed for equipment used for wood preserving and treatment. Petitioner did not testify at trial and provided no explanation of why he may have believed that the lease term was less than 50 percent of the useful life of the property. Under these circumstances, we find that petitioners failed to prove that they were not negligent with respect to the taxable year 1985. With respect to the taxable year 1986, we find that no underpayment exists. Therefore, an addition to tax under section 6653(a)(1)(A) and (B) is not proper. The final issue for decision is whether petitioners are liable for additions to tax under section 6661 for the taxable years in issue. Section 6661 imposes an addition to tax in an amount equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. Pallottini v. Commissioner, 90 T.C. 498 (1988). *374 An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. Sec. 6661(b)(1). Under section 6661(b)(2)(B), an understatement may be reduced if the taxpayer shows that there was substantial authority for the taxpayer's treatment of the item, or that the relevant facts affecting the tax treatment of the item are adequately disclosed on the return. Petitioners have presented no evidence that the section 6661(b)(2)(B) exceptions apply. Because of respondent's concessions, it is not clear whether petitioners substantially underreported their 1985 tax liability in the case at docket No. 25124-88. If the Rule 155 computation, which we will direct, reveals that petitioners' understatement of income tax liability for 1985 is "substantial" as defined in section 6661(b)(1)(A), then the addition to tax under section 6661(a) in docket No. 25124-88 will be sustained. Because we find for petitioners in the case at docket No. 32559-88, respondent's determination of the addition to tax under section 6661 for the taxable year 1986 will not be sustained. Decision will be entered under Rule 155 in Docket No. 25124-88. *375 Decision will be entered for petitioners in Docket No. 32559-88. APPENDIX A LIQUID TANKS
BID ITEM NO.
DESCRIPTION
QUANTITY
T-14
Movable, drying agent, steel, welded
1 each
tank, capacity: 22,000 gal.
T-15
Movable, drying agent, steel, welded
1 each
tank, capacity: 22,000 gal.
AIR SYSTEM (CYLINDER CHARGE)
BID ITEM NO.
DESCRIPTION
QUANTITY
A-1
Gardner Denver Stationary Compressor,
1 each
electric two statge, 350 lb. air pro-
duction capacity.
A-2
Emergency Air, Stationary Compressor 7.5
1 each
H.P., 250 PSI.
A-3
Air storage & receiving tanks 350 PSI,
1 each
1500 CI total.
TREATING CYLINDER SYSTEM
BID ITEM NO.
DESCRIPTION
QUANTITY
C-4
8'X85' welded, treating cylinder
1 each
equipped with fruit jar type doors,
insulated. Includes condensor, con-
densor reservoir tanks, and control
panel.
C-5
8'X145' welded, treating cylinder
1 each
equipped with hodge type doors, insulated.
Includes condensor, condensor reservoir
tanks, and control panel.
RECEIVING & PREPARATION STATION
BID ITEM NO.
DESCRIPTION
QUANTITY
R-1
Greenlee, A&B Mill
1 each
R-2
TABCO, 7 bay tie sorter. Includes
1 each
incoming bay and mill feeder bay.
Allen-Bradley controls.
(All or none on R-1 and R-2)
FRAMING MILL
BID ITEM NO.
DESCRIPTION
QUANTITY
F-1
Yates American Bandsaw, 7"X27'6" (A748)
1 each
F-4A
Bandsaw, 1"X18'10" (1183)
1 each
F-4B
Fay-Egan Bandsaw, 1/4'X13'9"
1 each
F-4C
Dewalt Delta Saw 9"X12" blade
1 each
F-4D
Dewalt Small Radial Arm Cutoff Saw
1 each
F-3
Stetson Ross Planer, 2"X4" to 18"X14"
1 each
F-4E
Wallace Universal Table Saw (2067)
1 each
F-4F
Fay Egan Table Saw
1 each
F-2
Dewalt 30" Radial Cutoff Saw
1 each
F-4G
Metal Bandsaw
1 each
MISCELLANEOUS
BID ITEM NO.
DESCRIPTION
QUANTITY
M-1
Cooling Tower, 2 fan
1 each
M-2
Condensation Collecting System
1 each
2 HP, HT pumps, overhead tank
* * *
M-4
Header/Manifold System
1 each
Includes 2 ea. 50 horse, rotary pumps
M-5
Plant electrical - power panels
1 set M-6
Hot water heater
1 each
* * *
M-8
Steam generator, natural gas, 50,000 lb.
1 each
combustion engineered.
M-9
Zeolite Water Softener
1 each
M-10A
Portable Scale (641)
1 each
M-10B
Hamilton Drill Press
1 each
M-10C
Industrial Punch & Shear (392)
1 each
M-10D
28" Drill Press
1 each
M-10E
Key Way Machine
1 each
M-10F
Metal Size Machine Do-All
1 each
M-11
Tie Bander and Stacker (Burned)
1 each
M-12
Overhead Crane including superstructure
1 each
rail, bridge, 10-ton capacity
EQUIPMENT
BID ITEM NO.
DESCRIPTION
QUANTITY
*E-4
Pettibone, super 60, 204D model
1 each
carrylife (H52-R)
*E-5
Drott, 10 ton, Mobile, hydraulic crane
1 each
*E-6
Liftall, 6000 lb. ($ 1410) forklift
1 each
*E-7
Air Compressor, towed, (830) rubber
1 each
tired
E-8
Trams, cylinder entry
102 each
*376 Footnotes
1. On May 3, 1989, this Court granted respondent's motion to consolidate the case at docket No. 32559-88 with the case at docket No. 25124-88 for trial, briefing, and opinion.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. During trial or on brief, respondent conceded that petitioners were entitled to all of the deductions claimed with respect to the property described as 498 Camelia Way. Respondent also conceded that petitioners were entitled to the deductions for interest expenses and depreciation which were claimed with respect to rental equipment reflected on petitioners' 1985 and 1986 tax returns. Finally, respondent conceded that petitioners were not liable for the addition to tax under section 6651(a)(1) for the taxable year 1986.↩
4. See Fisher v. Commissioner, T.C. Memo 1990-185↩.
5. We note that this testimony indicates that, at this time, Mr. Moore apparently believed that the equipment was properly categorized as wood treating equipment.↩
6. Petitioner appears to have received no consideration from Pacific Wood in return for his agreement in the lease addendum to reimburse Pacific Wood for certain expenses. While respondent makes no argument along these lines, we question whether petitioner's "reimbursement" under the addendum could be considered ordinary and necessary for purposes of section 162↩.